**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARMEN ORBEGOSO and JENNIFER ROGERS, on behalf of themselves and others similarly situated, | Civil Action No. 1:21-cv-03928 |
| Plaintiffs, | |
| v. | |
| SPROUT SOCIAL, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR APPROVAL OF SETTLEMENT UNDER THE FAIR LABOR STANDARDS ACT,**
**FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR, FOR APPROVAL OF**
**SERVICE AWARD, AND FOR APPROVAL OF ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS ............................ 1

    I.      Factual Allegations ................................................................................... 1

    II.     Overview of Investigation, Litigation, and Settlement Negotiations ................... 2

SUMMARY OF THE SETTLEMENT TERMS .............................................................. 2

    I.      The Settlement Fund ................................................................................. 2

    II.     Eligible Employees ................................................................................... 3

    III.    Notice and Check Distribution Process......................................................... 3

    IV.    Release .................................................................................................. 4

    V.     Settlement Awards ................................................................................... 4

    VI.    Service Awards ........................................................................................ 5

    VII.   Settlement Administrator .......................................................................... 5

    VIII.  Attorneys' Fees and Litigation Costs.......................................................... 6

ARGUMENT.......................................................................................................... 6

    I.      One-Step Approval Is Appropriate for FLSA Collective Action
           Settlements. ........................................................................................... 6

    II.     The Proposed Settlement Should Be Approved Because It Is Fair and
           Reasonable. ........................................................................................... 7

    III.    The Requested Service Award Should be Approved............................................ 9

    IV.    The Settlement Administrator Should be Appointed. ......................................... 10

    V.     Plaintiffs' Counsel Request for Attorneys' Fees and Litigations Expenses
           to be Approved. ...................................................................................... 10

    A.     The Court Should Award Attorneys' Fees from a Percentage of the Fund. ......... 10

i

B.      Analysis of the Market for Legal Services Supports Plaintiffs' Request..............12

C.      The Risk of Nonpayment Supports the Requested Attorneys' Fees....................13

D.      The Results and Benefits Conferred Upon the Settlement Class Justify the Requested Award ...............................................................................14

E.      Plaintiffs' Litigation Expenses ..........................................................................15

CONCLUSION...........................................................................................................15

TABLE OF AUTHORITIES

**Cases**

*Beckman v. KeyBank, N.A.*
  293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................................6, 7

*Beesley v. Int'l Paper Co.*
  No. 06 Civ. 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)......................................9

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) ...................................................................................................11

*Briggs v. PNC Fin. Servs. Group, Inc.*
  No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016)................................6, 11, 13

*Campbell v. Advantage Sales & Marketing LLC*
  No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. April 24, 2012) ...........................11

*Castillo v. Noodles & Co.*
  No. 16 Civ. 03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ...............................6, 11, 13

*Espenscheid v. DirectSat USA, LLC*
  705 F.3d 770 (7th Cir. 2013) .....................................................................................6, 9

*Florin v. Nationsbank of Ga., N.A.*
  34 F.3d 560 (7th Cir. 1994) .....................................................................................11, 12

*Gaskill v. Gordon*
  942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998)...................12

*Genesis Healthcare Corp. v. Symczyk*
  133 S. Ct. 1523 (2013) .................................................................................................6

*Goldberger v. Integrated Res., Inc.*
  209 F.3d 43 (2d Cir. 2000) .........................................................................................12

*Hens v. Clientlogic Operating Corp.*
  No. 05 Civ. 381S, 2010 WL 5490833 (W.D.N.Y. Dec. 21, 2010) ............................9

*Hensley v. Eckerhart*
  461 U.S. 424 (1983).....................................................................................................12

*Hoffman-La Roche Inc. v. Sperling*
  493 U.S. 165 (1989).......................................................................................................6

*In re Amino Acid Lysine Antitrust Litig.*
No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ...............................................12

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ....................................................................................12

*In re Cendant Corp. PRIDES Litig.*
243 F.3d 722 (3d Cir. 2001 ......................................................................................................11

*In re Synthroid Mktg. Litig.*
325 F.3d 974 (7th Cir. 2003) ...................................................................................................12

*Johnson v. Brennan*
No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............................................9

*Kaplan v. Houlihan Smith & Co.*
No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ...........................................11

*Kirchoff v. Flynn*
786 F. 2d 320 (7th Cir. 1986) ..................................................................................................13

*Knox v. The Jones Group*
No. 15 Civ. 1738, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017)............................................10

*Koszyk v. Country Financial a/k/a CC Services, Inc.*
No. 16 Civ. 4671, 2016 WL 5109196 (N.D. Ill. September 16, 2016)....................................11

*Lynn's Food Stores, Inc. v. U.S.*
679 F.2d 1350 (11th Cir. 1982) .................................................................................................7

*Matter of Cont'l Ill. Sec. Litig.*
962 F.2d 566 (7th Cir. 1992)....................................................................................................14

*McKenna v. Champion Int'l Corp.*
747 F.2d 1211 (8th Cir. 1984) ...................................................................................................6

*Mendez v. U.S. Nonwovens Corp.*
No. 12 Civ. 5583, 2016 WL 1306551 (E.D.N.Y. Mar. 31, 2016) .............................................8

*Prena v. BMO Fin. Corp.*
No. 15 Civ. 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ................................7, 11, 13

*Primax Recoveries, Inc. v. Sevilla*
324 F.3d 544 (7th Cir. 2003) ...................................................................................................11

*Ramah Navajo Chapter v. Babbitt*
50 F. Supp. 2d 1091 (D.N.M. 1999) ........................................................................................15

iv

*Roberts v. Apple Sauce, Inc.,*
No. 12-cv-830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ..............................................7

*Skelton v. G.M. Corp.*
860 F.2d 250 (7th Cir. 1988) ..............................................11

*Soto v. Wings 'R Us Romeoville, Inc.*
No. 15 Civ. 10127, 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) ..........................................10

*Sutton v. Bernard,*
504 F.3d 688 (7th Cir. 2007) ..............................................11, 12, 14

*Taubenfeld v. Aon Corp.*
415 F.3d 597 (7th Cir. 2005)..............................................13, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
396 F.3d 96 (2d Cir. 2005) ..............................................11

*Wong v. Accretive Health, Inc.*
773 F.3d 859 (7th Cir. 2014) ..............................................11

*Woods v. Club Cabaret, Inc.*
No. 15 Civ. 01213, 2017 WL 4054523 (C.D. Ill. May 17, 2017)..........................................7

*Zolkos v. Scriptfleet, Inc.*
12 Civ. 8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ..............................................10

**Statutes**
Fair Labor Standards Act ..............................................*passim*

**Rules**
Fed. R. Civ. P. 23..............................................6, 7

## INTRODUCTION

Subject to Court Approval, Plaintiffs Carmen Orbegoso and Jennifer Rogers ("Plaintiffs"), individually and on behalf of a collective they seek to represent ("Eligible Settlement Class Members"), and Defendant Sprout Social, Inc. ("Defendant"), have settled this wage and hour collective action for $345,000. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

Accordingly, Plaintiffs respectfully request that the Court issue an order approving the $345,000 settlement set forth in the Joint Stipulation of Settlement and Release Agreement ("Settlement Agreement"). For the Court's convenience, a Proposed Order is attached as Exhibit B to Declaration of Maureen Salas in Support of Plaintiffs' Unopposed Motion ("Salas Decl.").

## PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### I.    Factual Allegations

Plaintiffs are former Sales Development Representatives and Corporate Business Development Representatives (collectively, "Sales Representatives") who worked for Defendant in Chicago, Illinois. Plaintiffs allege that Defendant violated the FLSA by not paying Sales Representatives overtime wages as required by the FLSA. Salas Decl. ¶ 7. Plaintiffs claim that from November 4, 2017 to January 24, 2019, Defendant misclassified Sales Representatives as exempt from overtime in violation of the FLSA. Plaintiffs also allege that Defendant reclassified Sales Representatives as non-exempt on approximately January 24, 2019, but failed to include nondiscretionary bonuses and commission into the overtime premiums paid to Sales

Representatives from approximately January 24, 2019 through August 23, 2020.

## II.     Overview of Investigation, Litigation, and Settlement Negotiations

Before filing this lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Salas Decl. ¶ 8. Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they were entitled, and the likelihood of collective action certification. *Id.* ¶ 9. Plaintiffs' Counsel obtained and reviewed documents from the Plaintiffs and other Sales Representatives, including offer letters and pay data. *Id.* ¶ 10. Plaintiffs' Counsel also conducted in-depth interviews with the Plaintiffs. *Id.* ¶ 11.

On November 4, 2020, in an effort to explore potential pre-litigation resolution of these claims, Plaintiffs' Counsel informed Defendant by letter of the allegations that Defendant's overtime pay practice violated the FLSA. *Id.* ¶ 12. Defendant denied the allegations set forth in Plaintiffs' demand letter. Nevertheless, the Parties entered into a tolling agreement on November 16, 2020 and agreed to explore the possibility of resolution. *Id.* ¶ 13.

The Parties subsequently engaged in an informal exchange of discovery. *Id.* ¶ 14. Defendant produced payroll and other data to allow Plaintiffs' Counsel to prepare preliminary damage calculations. *Id.* ¶ 15. Plaintiffs' Counsel analyzed this data and constructed a damages model. *Id.* Between January 2021 and June 2021, the Parties engaged in numerous discussions regarding Plaintiffs' overtime claims. On July 22, 2021, the Parties executed a settlement agreement that is the subject of this motion. *Id.* ¶ 16.

## SUMMARY OF THE SETTLEMENT TERMS

### I.     The Settlement Fund

Defendant has agreed to pay $345,000.00 to settle the claims in this Action, which shall

be used to provide for (i) Settlement Payments to Eligible Settlement Class Members; (ii) Service Awards to the Named Plaintiffs; (iii) Plaintiffs' Attorneys' Fees; and (iv) Plaintiffs' Litigation Expenses.  Ex. A (Settlement Agreement) § 1(l). The Settlement Fund does not include the employer's share of applicable employment taxes or the costs of Settlement Administration, which Defendant will pay separate and apart from the Settlement Fund.  *Id.*

## II.     Eligible Employees

The Settlement Agreement defines Eligible Settlement Class Member in this settlement as: Plaintiffs and 43 additional persons employed by Defendant as Sales Representatives from approximately November 4, 2017 to January 24, 2019.  Ex. A (Settlement Agreement) § 1(j).

## III.     Notice and Check Distribution Process

Within 14 days after the Effective Date, Defendant will provide the Settlement Administrator and Plaintiffs' Counsel with an electronic list of: (i) name, (ii) last known mailing address, (iii) last known telephone number, (iv) employee ID number; and (v) Social Security Number of the Eligible Settlement Class Member.  Ex. A (Settlement Agreement) § 4(f)(v). Within 21 days after the Effective Date, Defendant will deposit $345,000 into the Qualified Settlement Fund ("QSF").  *Id.* § 4(d).  Within 14 days after Defendant fully funds the QSF with the Gross Settlement Amount, the Settlement Administrator will mail Settlement Checks via First Class U.S. Mail to each Eligible Settlement Class Member, mail any Court-approved Service Awards to the Named Plaintiffs, and wire any Court-approved attorneys' fees and costs to Plaintiffs' Counsel.  *Id.* § 4(f).

The Settlement Administrator will obtain a correct address for any Eligible Settlement Class Member for whom a Notice is returned as undeliverable, using Social Security Numbers, and re-mail notice to those individuals.  *Id.* § 4(f)(ii).

**IV.    Release**

Only individuals who participate in the settlement will release any claims.  Ex. A (Settlement Agreement) § 5.  Eligible Settlement Class Members who cash or deposit their Settlement Checks will release any and all claims unpaid overtime wages that the Eligible Settlement Class Member has or may have against Defendant or any of the other Released Parties, including but not limited to claims under the Fair Labor Standards Act, the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, and Revised Code of Washington § 49.46.130, and any other state or local wage and hour law which would apply.  *Id.*

**V.    Settlement Awards**

Each Eligible Settlement Class Member will be allocated a proportionate share of the Net Settlement Fund pursuant to an allocation formula based on the number of weeks they worked during the relevant period, whether they were paid overtime wages, and based on their salary, hourly rates, and commission and bonus earnings.  Ex. A (Settlement Agreement) § 3(d) (specifying the formula).  For the period of time when Defendant classified Sales Representatives as exempt from overtime, between November 4, 2017 and December 31, 2018, Plaintiffs' Counsel calculated the amount of overtime wages that would be due to each Eligible Settlement Class Member if he or she worked 6.67 overtime hours in each week he or she worked during the Class Period.  *Id.*

To calculate damages for the period of time that Defendant reclassified Sales Representatives as non-exempt, but did not pay the proper overtime premiums, between January 1, 2019 and August 23, 2020, Plaintiffs' Counsel calculated the additional overtime wages that would be due to each Eligible Settlement Class Member in each week they worked overtime hours if their non-discretionary bonuses and commission earnings were incorporated

into their regular rate for overtime pay purposes.

Plaintiffs' Counsel then calculated liquidated damages and if the Eligible Settlement Class Member worked in Illinois, a monthly Statutory Penalty of either 2% or 5%, depending on the date, pursuant to the Illinois Minimum Wage Law.

Plaintiffs' Counsel determined each Eligible Settlement Class Member's Settlement Payment by dividing the sum of his or her Total Owed Overtime Wages, Liquidated Damages, and Statutory Penalties by the total sum of all Eligible Settlement Class Members' Owed Overtime Wages, Liquidated Damages, and Statutory Penalties and multiplying the quotient by the Net Settlement Amount.

## VI.    Service Awards

Under the Settlement Agreement, subject to Court approval, Plaintiffs will apply to the Court to each receive Service Awards of $2,500, in recognition of services they rendered to the Eligible Settlement Class Members in obtaining the benefits of the settlement as well as the risks they took in doing so.  Ex. A (Settlement Agreement) § 3(c).  The Plaintiffs assisted counsel in the investigation of the Eligible Settlement Class Members' claims, participated in settlement discussions, responded to points raised by Defendant, and provided vital assistance that helped Plaintiffs' Counsel achieve this settlement for the benefit of the Eligible Settlement Class Members.  Salas Decl. ¶ 26.  Defendant does not contest the amount sought for the Service Awards.

## VII.    Settlement Administrator

The Parties have retained Analytics LLC, an experienced wage and hour claims administrator, to serve as the Settlement Administrator.  Salas Decl. ¶ 28; Ex. A (Settlement Agreement) § 1(c).  Defendant will pay the Settlement Administrator's fee.  Ex. A (Settlement

Agreement) § 1(l).

**VIII. Attorneys' Fees and Litigation Costs**

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive one-third of the Gross Settlement Amount as attorneys' fees, totaling $115,000, plus out-of- pocket costs. Salas Decl. ¶ 30; Ex. A (Settlement Agreement) § 3(b).

<u>**ARGUMENT**</u>

**I. One-Step Approval Is Appropriate for FLSA Collective Action Settlements.**

Plaintiffs filed their Complaint as a putative collective action. ECF No. 1. They do not seek Rule 23 certification of any state wage and hour claims. In the Seventh Circuit, a one-step approval process is the norm in FLSA settlements that do not include Federal Rule of Civil Procedure 23 ("Rule 23") classes. *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Castillo v. Noodles & Co.*, No. 16 Civ. 03036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016). This is because collective actions under Section 216(b) of the FLSA require workers to affirmatively opt into the litigation, unlike Rule 23 class actions, and thus do not implicate due process concerns. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).

Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Thus, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 476 (S.D.N.Y. 2013). There is no need to require that the settlement provide for opt-outs or

objections where individuals are not part of the settlement unless they affirmatively decide to participate in it. *See Prena v. BMO Fin. Corp.*, No. 15 Civ. 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).

## II.    The Proposed Settlement Should Be Approved Because It Is Fair and Reasonable.

The Parties' Settlement was the product of arm's-length negotiations by experienced wage and hour class/collective-action counsel. Salas Decl. ¶ 17. The Settlement has the effect of (1) providing monetary relief to those Eligible Settlement Class Members who opt into the Action, (2) in exchange for a narrow and limited release of the Eligible Settlement Class Members' overtime wage claims only, and (3) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Salas Decl. ¶ 18. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Id.* at 1353 n.8. "A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due." *Woods v. Club Cabaret, Inc.*, No. 15 Civ. 01213, 2017 WL 4054523, at *9 (C.D. Ill. May 17, 2017).[1]  When a proposed FLSA settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *See Beckman*, 293 F.R.D. at 476.

This FLSA settlement meets the standard for approval. Plaintiffs alleged that

---

[1]      *See also Roberts v. Apple Sauce, Inc.,* No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014) ("The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" (internal citations omitted)).

Defendant's classification of Sales Representatives as exempt from overtime violated the FLSA and that once Defendant began paying overtime wages, it failed to include nondiscretionary bonuses and commissions in the overtime premiums for a period of time, but these allegations are not without risk. Defendant contends it properly classified Sales Representatives as exempt from overtime and also paid them for properly all the time worked.

Although Plaintiffs believe their case is strong, it is subject to risk. First, there was a risk that Plaintiffs would not succeed in certifying or maintaining a collective through trial. Prior to settlement, the Court has not yet conditionally certified the collective under 29 U.S.C. § 216(b). Such determinations would likely be reached only after rounds of extensive briefing. In the event that the Court granted conditional collective certification, Defendant could challenge such certification with a motion to decertify. *See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, No. 12 Civ. 5583, 2016 WL 1306551, at *3-*7 (E.D.N.Y. Mar. 31, 2016) (decertifying collective as the plaintiffs failed to show that their claims for overtime was supported by "generalized proof").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Establishing damages, including the overtime hours that Sales Representatives worked could be difficult. Salas Decl. ¶ 19. These issues could substantially affect the damages owed to Plaintiffs. Therefore, the Settlement is reasonable in light of these risks and should be approved.

The settlement of $345,000 represents a significant percentage of the recovery that Eligible Settlement Class Members would have achieved had they prevailed on all of their claims and survived an appeal, and a substantial portion of what Defendant would be required to pay if faced with a judgment. Plaintiffs' Counsel estimates that the settlement represents approximately 100 percent of Plaintiffs' actual lost wages and liquidated damages, assuming that

Eligible Settlement Class Members worked an average of 46.73 hours a week in every week they worked during the Class Period. *Id.* ¶ 21.

The allocation of the settlement is also reasonable. It reflects the proportion of damages owed to each Eligible Settlement Class Member based on the number of weeks she or he worked for Defendant during the relevant period and the wages he or she earned. Ex. A (Settlement Agreement) ¶ 3(d).[2]

## III.    The Requested Service Award Should be Approved.

The Settlement Agreement contemplates providing a Service Award to Named Plaintiffs Orbegoso and Rogers in the amount of $2,500.00 each, to acknowledge their time and effort expended in helping to achieve a successful Settlement. This payment is in addition to any payment they receive as their *pro rata* share of the Net Settlement Fund.

Courts allow separate awards to be paid to class representatives in recognition of the risks taken, time expended and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014). Additionally, the Named Plaintiffs assumed significant risk that "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid,* 688 F.3d at 876-77 (internal citations omitted).

The roles of the Named Plaintiffs in this litigation were crucial. They initiated the filing

---

[2]      *See Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on each plaintiff's length of service was equitable and reasonable); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *3, 21 (S.D.N.Y. Sept. 16, 2011) (approving allocation formula based upon weeks worked for defendant).

of the lawsuit, conferred and corresponded with Plaintiffs' Counsel on a regular basis, and

produced documents. Salas Decl. ¶ 26. Their efforts strengthened Plaintiffs' position and aided

in achieving an excellent result for the Eligible Settlement Class Members. *Id.*

The Service Award requested comports with service payments recently awarded to

Named Plaintiffs in other FLSA actions. *See Soto v. Wings 'R Us Romeoville, Inc.,* No. 15 Civ.

10127, 2018 WL 1875296, at *3 (N.D. Ill. Apr. 16, 2018) (in FLSA settlement, approving a

service award of $7,500 to the named plaintiff).[3] The requested Service Awards totaling $5,000

is less than 1.4% of the Settlement Fund. Salas Decl. ¶ 27. This percentage is well within the

range other courts have found to be reasonable. *Soto,* 2018 WL 1875296, at *3 (approving a

total of $15,500 in service awards, representing approximately 3.4% of the total $450,000

settlement amount); *Zolkos,* 2015 WL 4275540, at *3 (awarding a total of $144,000 in service

awards, representing approximately 4.3% of the guaranteed settlement amount of $3,350,000).

Accordingly, the Service Award is reasonable, and this Court should approve it.

**IV. The Settlement Administrator Should be Appointed.**

Plaintiffs also ask that the Court appoint Analytics LLC as the third-party Settlement

Administrator. Analytics LLC has experience administering large and complex settlements and

was jointly selected by the Parties. Salas Decl. ¶ 29.

**V. Plaintiffs' Counsel Request for Attorneys' Fees and Litigations Expenses to be Approved.**

A. The Court Should Award Attorneys' Fees from a Percentage of the Fund.

The Court should award attorneys' fees as a percentage of the total fund made available

---

[3]      *See also Zolkos v. Scriptfleet, Inc.,* 12 Civ. 8230, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $5,000 - $10,000 in service awards to 20 named plaintiffs); *Knox v. The Jones Group,* No. 15 Civ. 1738, 2017 WL 3834929, at *3 (S.D. Ind. Aug. 31, 2017) (in FLSA settlement, approving service awards of $7,500 each to two Named Plaintiffs).

to the Class.  When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[4] This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988).[5]

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one.[6]  It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256.  Here, the Settlement releases Eligible Settlement Class Members' statutory claims to fees under the FLSA and state wage and hour laws.[7]

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method.  First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase

---

[4]       *See also Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee").

[5]       *See also Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

[6]       *See, e.g., Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell v. Advantage Sales & Marketing LLC*, No. No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. April 24, 2012) (FLSA settlement); *see also Koszyk v. Country Financial a/k/a CC Services, Inc.*, No. 16 Civ. 4671, 2016 WL 5109196, at *3-4 (N.D. Ill. September 16, 2016); *Prena*, 2015 WL 2344949, at *1; *Briggs*, 2016 WL 7018566, at *3; *Castillo*, 2016 WL 7451626, at *4.  The trend in other circuits is to use the percentage of the fund method as well.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

[7]       *See, e.g.*, 29 U.S.C. § 216(b).

11

their billable hours.  *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003).

Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to

make cost-efficient decisions about whether certain expenses are worth the win."  *Gaskill v.*

*Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998).[8]

      Second, the percentage method preserves judicial resources because it saves the Court

from the cumbersome task of reviewing complicated and lengthy billing documents.  *Florin*, 34

F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of

administration").[9]  Courts in this district routinely apply the percentage method to common fund

settlements and have noted the advantages of this approach.  *See, e.g.*, *In re AT&T Mobility*

*Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using

percentage method because it did "not need to resort to a lodestar calculation, which would be

costly to conduct, to reinforce the same conclusion").  As the Second Circuit has explained, the

"primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of

Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee

audits."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000).

     **B.**     **Analysis of the Market for Legal Services Supports Plaintiffs' Request.**

     In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently

directed district courts to 'do their best to award counsel the market price for legal services, in

light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"

S*utton,* 504 F.3d at 692, 693-94 (collecting cases).  The Seventh Circuit has held that "[a]lthough

---

[8]     *See also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2
(N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee
based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests
while at the same time preserving the lawyers' self-interest").
[9]     *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests
"should not result in a second major litigation")).

it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.') (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325.

Here, Counsel executed a fee arrangement with the Named Plaintiffs entitling Counsel to one-third of any recovery. Salas Decl. ¶ 31. Because the Parties negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs,* 2016 WL 7018566, at *4. Plaintiffs' Counsel's request is particularly reasonable here, as they seek only $33^{1}/_{3}$% of the common fund, as agreed upon. The percentage requested is also consistent with the standard contingent fee percentage in the Northern District of Illinois for comparable employment litigation. *Briggs,* 2016 WL 7018566, at *4; *Prena,* 2015 WL 2344949, at *1; *Castillo*, 2016 WL 7451626, at *4.

## C. The Risk of Nonpayment Supports the Requested Attorneys' Fees.

Plaintiffs' Counsel's decision to seek the market rate is also reasonable considering the significant risks of nonpayment Counsel faced. At the outset of the litigation, Counsel took "on a

significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld,* 415

F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Counsel took this case on a contingent fee basis and assumed the risk they would receive

*no* fee for their services. Salas Decl. ¶ 32.[10] Here, Counsel faced significant risk in establishing

that collective treatment was appropriate. As the Seventh Circuit has noted, counsel "could have

lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992)

(Posner, J.). These facts support Plaintiffs' Counsel's fee request.

### D. The Results and Benefits Conferred Upon the Settlement Class Justify the Requested Award

The benefit that Eligible Settlement Class Members will receive is significant. The entire

$345,000 that will be deposited into the Settlement Account will be distributed to the Named

Plaintiffs, Eligible Settlement Class Members, and Plaintiffs' Counsel. Salas Decl. ¶ 20. All

Eligible Settlement Class Members will receive a check via U.S. Mail, representing their *pro*

*rata* share of the Net Settlement Fund without the need to submit a claim form. *Id.* ¶ 22.

In addition, the payments Eligible Settlement Class Members will receive are significant.

Salas Decl. ¶ 23. Even after the payment of Attorneys' fees and litigation expenses and the

Service Award, Eligible Settlement Class Members will receive a maximum payment of

approximately $11,800 and an average payment of approximately $5,090. *Id.* ¶ 24. This is an

exceptional result by any measure inasmuch as Defendant denies that any of its policies and

practices violated the FLSA. *Id.* ¶ 25.

Further, Eligible Settlement Class Members who timely negotiate their Settlement

Payment check will provide Defendant with a limited release of their overtime wage claims.

---

[10]     *See Sutton,* 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is
generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their
efforts) when representing a class because their fee is linked to the success of the suit.").

Those Eligible Settlement Class Members who do not cash their Settlement Payment checks will not release any of their claims against Defendant. Ex. A (Settlement Agreement) § 5(c). The absence of a general release exemplifies the results achieved for the Eligible Settlement Class Members. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the excellent result achieved for Eligible Settlement Class Members, Plaintiffs' Counsel is entitled to a reasonable attorneys' fees award of $33^{1}/_{3}$% of the Settlement Fund, equal to $115,000.

### E. Plaintiffs' Litigation Expenses

The settlement provides that Plaintiffs' Counsel may apply to the Court for payment of litigation expenses up to $700. Plaintiffs' Counsel seek reimbursement of $674.05, which is the amount of litigation expenses Plaintiffs' Counsel has incurred in this matter through filing this action, postage, and electronic research. Salas Decl. ¶ 33. Plaintiffs' Counsel's request of that amount from the Settlement Fund as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate and settle this case. *Id.* ¶ 34.

### CONCLUSION

This Settlement was reached after extensive settlement negotiations. The Parties engaged in a thorough analysis of the facts and the data at issue and the Settlement provides Eligible Settlement Class Members with significant monetary relief. Because the settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties, it should be approved.

Dated: July 23, 2021

Respectfully submitted,

/s/Maureen A. Salas
*Attorney for Plaintiffs*

Maureen A. Salas – msalas@flsalaw.com
**Werman Salas P.C.**
77 W. Washington Street
Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008